1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Julia K. Venditti (State Bar No. 332688)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
          jvenditti@bursor.com
          jglatt@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

LUCY TRIM and KRISTINE DRINOVSKY, individually and on behalf of all others similarly situated,

                              Plaintiffs,

        v.

DIVA FAM, INC., d/b/a TRUE SEA MOSS

                              Defendant.

Case No.    2:25-cv-9756

**CLASS ACTION COMPLAINT**

<u>JURY TRIAL DEMANDED</u>

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiffs Lucy Trim and Kristine Drinovsky (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Diva Fam, Inc., doing business as True Sea Moss ("True Sea Moss" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.    This is a putative class action lawsuit against Defendant for engaging in illegal strikethrough pricing and "automatic renewal" schemes with respect to its products and services sold through its website at https://www.trueseamoss.com/ (the "Website").  Specifically, as explained in greater detail below, Defendant advertises fictitious sales prices and phantom discounts on products sold through its Website. This practice allows Defendant to fabricate fake "reference prices" for its products, and present the actual prices as "discounted," when they are not.  The result is a sham price disparity that is per se illegal under California and Oregon laws.  In addition, Defendant also engages in illegal "automatic renewal" schemes with respect to its products and services through its Website.  Relevant to Plaintiff Kristine Drinovsky's allegations, when Oregon consumers purchase a purportedly discounted product from the Website, they are unwittingly enrolled in an "Auto-Refill" program that results in automatic purchases of the product every 30 days and, correspondingly, monthly charges to the consumer's credit card, debit card, or third-party payment account ("Payment Method").  In doing so, Defendant fails to provide the requisite disclosures and authorizations required to be made pursuant to Oregon consumers under Oregon's Automatic Renewal Law (the "Oregon ARL"), ORS 646A.295, in direct violation of Oregon's Unlawful Trade Practices Act ("UTPA"), ORS 646.608(1)(ttt).

2.    The market for supplements containing sea moss, such as Defendant's products at issue here, is one of the fastest growing vitamin and supplement markets

in the world.  The global sea moss supplement market was valued at $300 million in 2024 and is expected to reach $520 million by 2032.

3.    Defendant seeks to carve out its own share of this hypercompetitive market by offering perpetual "sales" and discounted prices through its Website.

4.    Indeed, Defendant sells and markets sea moss supplement products (the "Products") online through the True Sea Moss brand and website, https://www.trueseamoss.com/ (the "Website").  It sells its Products using fake sales, and has used fake sales for years.  Consumers buy the Products believing that they are getting a discount—when in fact they are not.

5.    Defendant's unlawful approach at gaining market share through false sales pricing is historically effective.  Advertised "sale" prices are important to consumers.  Consumers are more likely to purchase an item if they know that they are getting a good deal.  Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

6.    While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices and made-up discounts—is deceptive and illegal.

7.    As the Federal Trade Commission advises in its *Guides Against Deceptive Pricing*, it is deceptive to make up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.

8.    Indeed, use of false sales pricing violates California law.  *See, e.g.*, Cal. Bus. & Prof. Code § 17501 ("No price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding"); Cal. Civ. Code § 1770(a)(9), (13) (prohibiting "advertising goods or services with the intent not to sell them as advertised" and "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions"); *see also id.* § 1770(a)(5); Cal. Bus. & Prof. Code § 17200 (prohibiting "any unlawful, unfair or fraudulent business act or practice and unfair,

deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code").

9.      In addition, Oregon's UTPA expressly prohibits businesses from making "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions," O.R.S. § 646.608(1)(j); "false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services," O.R.S. § 646.608(1)(s); representing that goods have "characteristics" that they do not have, O.R.S. § 646.608(1)(e); advertising "goods … with intent not to provide the real estate, goods or services as advertised," O.R.S. § 646.608(1)(i); and making "false or misleading statements about a … promotion," O.R.S. § 646.608(1)(p).  The UTPA also prohibits sellers from using misleading price comparisons to advertise their products.  O.R.S. § 646.608(1)(ee).

10.     Unfortunately for consumers, however, though Defendant prominently advertises its Products with a strike thought price discount for, e.g., "30% OFF TODAY," Defendant's purportedly discounted "TODAY" price has been available to consumers *everyday* for more than 90 consecutive days.

11.     As described in greater detail below, Plaintiffs each bought items purportedly discounted from Defendant's Website.  When Plaintiffs made their purchases, Defendant advertised that a sale was going on through fictitious strikethrough pricing whereby for each of its Products Defendant showed a higher "original" price with a line through it, alongside a current sale price in bold and percentage discount (e.g., "30% OFF TODAY"), to imply the Products were subject to time-limited price reductions.  Thus, Defendant represented that the Products Plaintiffs purchased were being offered at steep discounts as compared to their purported regular prices.  And based on Defendant's representations, Plaintiffs believed that they were purchasing Products whose regular prices and market values

were the purported list prices (or "reference" prices) that Defendant advertised, that they were receiving a substantial discount, and that the opportunity to get that discount was time-limited. These reasonable beliefs are what caused Plaintiffs to buy Products from Defendant.

12.    In truth, however, the representations that Plaintiffs relied on were not true. The purported list prices were not the true regular prices, the purported discounts were not the true discounts, and the discounts were not time-limited.

13.    For instance, Defendant prominently advertises its Products with a strike thought price discount for, e.g., "30% OFF TODAY," Defendant's purportedly discounted "TODAY" price has been available to consumers *everyday* for more than 90 consecutive days.

14.    Moreover, Defendant's false "__% OFF TODAY" representations are contingent on consumers unknowingly enrolling in an automatically renewing subscription for recurring shipments of Defendant's Products. Indeed, as discussed in greater detail below, when a consumer attempts to purchase a Product from the Website at the advertised discount price during the checkout process, the consumer is, by default, enrolled in Defendant's automatically renewing "Auto-Refill" program. The only way for the consumer to avoid that outcome is to toggle a button inconspicuously displayed on one on the webpages displayed during that process, next to equally inconspicuous text stating "Switch to one time." Worse, Defendant fails to provide any accompanying statements clearly and conspicuously disclosing the terms of the automatic renewal offer on that or any other webpage displayed to the consumer prior to checkout. Thus, when consumers complete the transaction without selecting the inconspicuous "Switch to one time" toggle button, they are unwittingly enrolled in Defendant's Auto-Refill program, pursuant to which the consumer's Payment Method will be automatically charged for, and the consumer will receive shipments of, the same Product every 30 days after the date of the initial purchase. The automatic charges and shipments will then continue unless and until

the consumer takes affirmative action to cancel the Auto-Refill subscription.

15.     In sum, Defendant has systematically violated California and Oregon law by advertising false reference pricing and fake discounts on its Products, despite the fact that the purported sales prices are not time-limited but are in fact perpetually available to consumers.  *See* Cal. Bus. & Prof. Code § 17501; Cal. Civ. Code §§ 1770(a)(5), (9), (13); Cal. Bus. & Prof. Code § 17200; *see also* O.R.S. §§ 646.608(1)(j), (s), (e), (i), (p), (ee).

16.     Simultaneously, Defendant also violates Oregon's UTPA by enrolling consumers in automatically recurring subscriptions they did not know they were entering and charging their Payment Methods every 30 days for automatic shipments of the purportedly discounted product(s) they purchased under the mistaken belief that the initial transaction was a one-time purchase—without first providing the disclosures and safeguards required by law.  Specifically, Defendant systematically violates the Oregon ARL by, *inter alia*, failing to present the automatic renewal offer terms in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity to the request for consent to the offer, in violation of ORS 646A.295(1)(a).  In doing so, Defendant's unlawful practice constitutes a direct violation of Oregon's UTPA.  *See* ORS 646.608(1)(ttt) ("A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following: … (ttt) Violates a provision of ORS 646A.295 (Prohibited actions).").

17.     As a result of Defendant's ARL violations, all goods, wares, merchandise, or products sent to Plaintiffs and the Class under the automatic renewal or continuous service agreements are deemed to be "unconditional gifts" under the Oregon ARL.  *See* ORS 646A.295(5) ("In the event a person sends goods, wares, merchandise or products to a consumer under a continuous service agreement or pursuant to an automatic renewal of a purchase without first obtaining the consumer's affirmative consent as required in subsection (1) of this section, the

goods, wares, merchandise or products shall for all purposes be deemed an unconditional gift to the consumer who may use or dispose of them in any manner the consumer sees fit without any obligation to the person including, but not limited to, requiring the consumer to ship, or bear the cost of shipping, any goods, wares, merchandise or products to the person.").

18.    Had Defendant been truthful regarding pricing, Plaintiffs and other consumers like them would not have purchased the Products, or would have paid less for them.  Thus, as a direct result of Defendant's false and misleading pricing representations in violation of California and Oregon law, Plaintiffs suffered economic injury.

19.    Likewise, had Defendant complied with the Oregon ARL, Ms. Drinovsky would have been able to read and review the automatic renewal offer terms prior to completing her purchase, and she would not have enrolled in Defendant's Auto-Refill program at all or on the same terms, or she would have cancelled her Auto-Refill subscription earlier, *i.e.*, prior to any subsequent renewal term.  Thus, as a direct result of Defendant's violations of the Oregon ARL, Ms. Drinovsky suffered economic injury.

20.    Plaintiffs bring this case on behalf of themselves and all other customers who purchased any of the purportedly discounted Products from Defendant's Website.

21.    Further, Plaintiff Drinovsky brings UTPA claims pursuant to ORS 646.608(1)(ttt), stemming from violations of the Oregon ARL, on behalf of all customers who were enrolled in and incurred one or more renewal charges in connection with Defendant's automatically renewing Auto-Refill program after purchasing any of the purportedly discounted Products from Defendant's Website without selecting the "Switch to one time" toggle button during the checkout process.

22.    Accordingly, based on Defendant's unlawful conduct, Plaintiffs seek, individually and on behalf of all others similarly situated, damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for violations of: (i) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (ii) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (iii) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (iv) Oregon's Unlawful Trade Practices Act (the "UTPA"), O.R.S. §§ 646.608(1)(j), (s), (e), (i), (p), (ee); and (v) Oregon's UTPA, O.R.S. 646.608(1)(ttt).

## **PARTIES**

23.    Plaintiff Lucy Trim is a citizen of California and resident of Downey, California.  Plaintiff Trim purchased a 16 ounce Mango Sea Moss, a 16 ounce Blue Spirulina Sea Moss, and Strawberry Sea Moss jar from Defendant's Website from her home in Downey, California, on April 10, 2025.  At the time Plaintiff Trim purchased her Products, Defendant displayed an original, strike-through reference price of $80, but she paid just $48.00, representing that Plaintiff would have a "Total Savings [of] $32.00."  Before Plaintiff Trim purchased her Products, she reviewed information about the Products, including Defendant's representations that the Products were being offered at "40% OFF TODAY."  When purchasing the Products, Plaintiff Trim also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and warranties by Defendant that the Products were ordinarily offered at a higher price of $80.

24.    Plaintiff Trim relied on Defendant's false and misleading representations and warranties about the Products in making her decision to purchase the Products.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products, or would not have paid as much for the Products, had she known Defendant's representations were

not true.  Defendant's representations about its Sea Moss Products are false and misleading because they induce consumers into believing that they are purchasing a Product of a higher value and quality than they actually are.  At the time of Plaintiff's purchase, Defendant's Products had not been advertised at their official strike-through reference price for more than 90 consecutive days.

25.    Had Plaintiff Trim known the truth—that the representations she relied upon in making her purchase were false and misleading—she would not have purchased the Products or would have paid less for them.  Plaintiff Trim did not receive the benefit of her bargain, because Defendant's Products were not of the represented quality and value.  Plaintiff Trim understood that her purchase involved a direct transaction between herself and Defendant, because the Products she purchased came with packaging, labeling, and other materials prepared by Defendant.  Plaintiff Trim remains interested in purchasing Defendant's Products in the future.  However, she is unable to determine if the Products' prices are properly advertised and if she is, in fact, making a purchase on discounted terms, unless and until Defendant is required to comply with California law.  She is likely to be repeatedly mislead by Defendant's conduct, unless and until Defendant is compelled to ensure that its referenced-discount pricing is the true reference pricing and strike-through discount from that referred-to price.

26.    Plaintiff Kristine Drinovsky is a citizen of Oregon and a resident of Hillsborough, Oregon.  Plaintiff Drinovsky purchased a 16 ounce Apple Cinnamon Sea Moss Gel Superfood and Mango Pineapple Sea Moss Gel Superfood from Defendant's Website from her home on May 28, 2025.  At the time Plaintiff purchased her Products, Defendant purchased displayed an original, strike-through reference price of $80.00, representing that Plaintiff would have a "Total Savings [of] $32.00."  Plaintiff purchased the Products at the sale price of $48.00.  Before purchasing the Products, Ms. Drinovsky reviewed information about the Products, including Defendant's representations that the Products were being offered at a

discounted sales price, including but not limited to the representations that the Products were "discounted" and "40% OFF." When purchasing the Products, Plaintiff Drinovsky also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and warranties by Defendant that the Products were ordinarily offered at a higher price of $80.

27. Ms. Drinovsky relied on Defendant's false and misleading representations and warranties about the Products in making her purchase decision. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products, or would not have paid as much for the Products, had she known Defendant's representations were not true. Defendant's representations about its Sea Moss Products are false and misleading because they induce consumers into believing that they are purchasing the Products at a higher value and quality than they actually are. At the time of Plaintiff's purchase, Defendant's Products had not been advertised at their official strike-through reference price for more than 90 consecutive days.

28. Had Plaintiff Ms. Drinovsky known the truth—that the representations she relied upon in making her purchase were false, misleading, and deceptive—she would not have purchased the Product or would have paid less for it. Plaintiff Drinovsky did not receive the benefit of her bargain, because Defendant's Products were not of the represented value she believed she was receiving. Plaintiff Drinovsky understood that her purchase involved a direct transaction between herself and Defendant, because the Products she purchased came with packaging, labeling, and other materials prepared by Defendant. Plaintiff remains interested in purchasing Defendant's Products in the future. However, she is unable to determine if the Products' prices are properly advertised and if she is, in fact, making a purchase on discounted terms, unless and until Defendant is required to comply with California law. She is likely to be repeatedly mislead by Defendant's conduct unless and until Defendant is compelled to ensure that its referenced-discount pricing is the

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    9

true reference pricing and strike-through discount from that referred-to price.

29.     Furthermore, Plaintiff Drinovsky was automatically enrolled in a renewing Sea Moss refill subscription when she purchased the Defendant's Products. She was discretely enrolled in the monthly subscription for automatically recurring subscriptions that Defendant inconspicuously made a precondition of the Products' false discount.  Plaintiff did not knowingly provide affirmative assent to the recurring Sea Moss Refill Subscription.  Thus, Ms. Drinovsky did not even realize she had purchased a subscription until after she was charged.

30.     Defendant Diva Fam, doing business as True Sea Moss, is a California corporation with its principal place of business in San Dimas, California.  Defendant manufactures, markets, and advertises and distributes its Sea Moss Products throughout the United States, including California.

## JURISDICTION AND VENUE

31.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

32.     This Court has personal jurisdiction over the Defendant because Defendant purposefully availed itself of the benefits of this District by selling its Products to consumers, like Plaintiff Trim, in this District.  Additionally, Defendant resides in this District.

33.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and a substantial portion of the events giving rise to the cause of action occurred in this District.

1

## **FACTUAL ALLEGATIONS**

2

### **A.     Sea Moss Is At The Center Of A New Health Care Fad**

3

34.     Sea moss as a health supplement has surged as a popular nutrition

4

trend.[1]  Indeed, celebrities like Hailey Beiber sell a smoothie that retails for about

5

$20.  Its star ingredient: "sea moss, a gelatinous semi-translucent gel seaweed

6

scientifically known as Chondrus crispus."[2]

7

35.     Although far from conclusive, marketers and manufacturers like

8

Defendant have leaned on research suggesting sea moss provides certain anti-

9

inflammatory, thyroid, gut health, and antibacterial benefits.[3]

10

36.     Accordingly, it should come as no surprise that the sea moss

11

supplements market has ballooned to over $300 million.[4]

12

### **B.     Defendant Capitalizes Off This Exploding Demand, Misleading Consumers Into Believing They Are Buying Products At Discount**

13

14

37.     Defendant sells a host of sea moss supplements, including gels,

15

gummies, and capsules.

16

17

[1] Lauren David, *Sea Moss Has Become A Billion-Dollar Health Trend.  Is It Worth The Hype?*, NAT'L GEOGRAPHIC (Apr. 8, 2025) *available* https://www.nationalgeographic.com/health/article/sea-moss-health-benefits-effects

18

19

[2] Jessie Klein, *Ingredients In Focus: Is Sea Moss The Next Superfood?*, FOOD DRIVE (Sept. 19, 2024) *available* https://www.fooddive.com/news/ingredients-in-focus-sea-moss-seaweed/727493/.

20

21

[3] *See generally* Vijay Kumar Malesu, *Does Eating Sea Moss Provide Health Benefits*, News Med. Life Sciences (July 1, 2025) *available* https://www.news-medical.net/health/Does-Eating-Sea-Moss-Provide-Health-Benefits.aspx.;  *See also* trueseamoss.com, *available* https://trueseamoss.com/?srsltid=AfmBOoqLK7qKZruOQfOJsO9HCcCvY61NyM0JMrKG3FHEfcNDrpvFiSYP, touting antioxidant and digestion benefits among others.

22

23

24

25

[4] BUSINESS RESEARCH INSIGHTS, *Sea Moss Supplements Market size, Share, Growth, and Industry Analysis, By Type (Capsule, Liquide, Gummies and Others), By Application (Supermarket, Retail Stores, Online and Others) and Regional Insights and Forecast to 2032*, available https://www.businessresearchinsights.com/market-reports/sea-moss-supplements-market-117668.

26

27

28

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

38.    According to SimilarWeb, a webtool that tracks website visitors, Defendant's website, trueseamoss.com, is one of the largest sea moss supplement websites.  Defendant's website averages more than 760,000 monthly visits.

39.    Defendant engages in systematic false reference pricing on its website across just about every Product it offers.

40.    For example, below is a reproduced screenshot of Defendant's Product list on its *Catalog* webpage on July 23, 2025.  Each Product is advertised at a discounted price[5]:

[SPACE INTENTIONALLY LEFT BLANK]

---

[5] The figure shown at Paragraph 35 above is a screenshot from the *Catalog* webpage of Defendant's Website, captured on July 23, 2025.



41.    But, as shown in Archived webpages from Defendant's Website available through the WayBackMachine, an internet archive service that captures

screenshots of webpages on specific dates, several of those same products (in red) were offered at the *same* discount beside the *same* stricken reference price on March 19, 2025:



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

42.     Most deceptive, however is Defendant's false reference pricing on the checkout page for each Product.

43.     When a consumer selects a Product, they are taken to the Product's page, which prominently features the stricken "real price" beside the new discount price.  Under that price, Defendant places a sign reading "30% OFF TODAY."[6]



44.     The same "TODAY" discount was also offered on April 23, 2025:

---

[6] The screenshot presented at paragraph 47 was captured from Defendant's website as it appeared on July 23, 2025.

1
2
3
4
5
6
7
8
9
10
11



12        45.     This discount has been offered for more than 90 consecutive days.

13        46.     Indeed, this precise "discount" was also offered on May 28, 2025:

14
15
16
17
18
19
20
21
22        47.     After selecting "TRY IT NOW," Defendant doubles down on the false

23   discount representation, inviting the consumer to select a quantity with

24   correspondingly and proportionally false discounted sales price beside each

25   strikethrough price:

26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16      48.     On that webpage, Defendant also pre-selects the subscription button in

17  an easy-to-miss toggle presented in one of the smallest fonts on the page.

18      49.     The third webpage in the checkout process—where the consumer

19  selects the flavor—triples down on the pricing and discount misrepresentations:

20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15
16    **C.     Federal and State Law Prohibits Defendant's "Sales" Practices**

17        50.    California law provides clear guidelines as to permissible and unlawful

18    sales tactics:

19            For the purpose of this article the worth or value of any thing
20            advertised is the prevailing market price, wholesale if the
             offer is at wholesale, retail if the offer is at retail, at the time
21            of publication of such advertisement in the locality wherein
             the advertisement is published.
22

23            No price shall be advertised as a former price of any
24            advertised thing, unless the alleged former price was the
             prevailing market price as above defined within three
25            months next immediately preceding the publication of the
26            advertisement or unless the date when the alleged former
             price did prevail is clearly, exactly and conspicuously stated
27            in the advertisement.

28

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    18

Cal. Bus. & Prof. Code § 17501.

51.    Additionally, California law expressly prohibits making false or misleading statements of fact "concerning reasons for, existence of, or amounts of price reductions." *See* Cal. Civ. Code § 1770(a)(13).

52.    The Federal Trade Commission ("FTC") provides retailers with additional guidance as to permissible and unlawful sales tactics. *See* 16 C.F.R. § 233.

53.    The FTC provides the following guidance on former price comparisons:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. **If, one the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**

16 C.F.R. § 233.1(a) (emphasis added).

54.    The FTC further provides that "[t]he advertiser should be especially careful […] that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.**" 16 CFR § 233.1(b) (emphasis added).

55.     The FTC also provides retailers with guidance as to retail price comparison:

> Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business). This may be done either on a temporary or a permanent basis, but in either case **the advertised higher price must be based upon fact, and not be fictitious or misleading.** Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area - that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. § 233.2(a) (emphasis added).

56.     Essentially, federal and state law provides that sales practices should be offered in good-faith and accurately reflect the price at which comparable products are sold in the market.

### ***Defendant's Deceptive Sales Practices***

57.     Defendant primarily sells its Products through its e-commerce website.

58.     In an effort to increase sales, Defendant engages in a pervasive online marketing scheme to artificially inflate the prices of its Products for the sole purpose of marking them at a discounted sale price.  Defendant is aware that consumers typically lack material information about a product and often rely on information from sellers when making purchasing decisions, especially when a product's quality or value is difficult to discern.[7]

---

[7] *Information and Consumer Behavior*, Phillip Nelson, J. OF POL. ECON. 78, no. 2, p. 311-312 (1970) ("Not only do consumers lack full information about the price of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain.").

1

2

3

59.     Defendant has multiple methods of deceiving consumers into believing that they are receiving a bargain on the Products they purchase through Defendant's online e-commerce store.

4

5

6

7

60.     First, Defendant utilizes a fictitious strike-through reference price accompanied by a purported discount amount.  Next to the fictitious reference price is a lower purported sale price.  Defendant further warrants to consumers that they benefit from "X% off" through their purchase and that such products are on sale.

8

9

10

61.     In short, Defendant's sales tactics are not offered in good faith and are made for the sole purpose of deceiving and inducing consumers into purchasing products they otherwise would not have purchased.

11

12

13

62.     Defendant did not sell its Products at the advertised strike-through reference price and had not done so for at least 90 days when Plaintiffs made their purchases, but it was likely doing so for much longer.

14

15

16

63.     Defendant's advertised false reference prices and advertised false discounts were material misrepresentations and made for the purpose of inducing consumers like Plaintiffs to make their purchases.

17

18

19

20

21

22

64.     As a result of Defendant's misconduct, consumers are fooled into believing they have the opportunity to purchase Sea Moss Products at a limited-time discount price, thereby inducing them to make the transaction.  Given that Defendant almost never actually sells its Products at their full retail prices, Plaintiffs and the members of the Class are not receiving the bargain or value Defendant would have them believe they are.

23

24

**D.     Defendant's Sneaky Enrollment Practice Violates Oregon's Automatic Renewal Law**

25

26

27

28

65.     In 2011, with the passage of Oregon's Senate Bill 487, the Oregon Legislature enacted the Automatic Renewal Law ("ARL"), ORS 646A.292-646A.295, with the intent to "end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit

consent for ongoing shipments of a product or ongoing deliveries of service." ORS 646A.292 (statement of legislative intent).

66.    The ARL makes it "unlawful for a person that makes an automatic renewal or continuous service offer to a consumer in this state to do ***any*** of the following:"

> (a) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.

> (b) Charge the consumer's credit or debit card or payment account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms.

> (c) Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free trial, the person shall also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

ORS 646A.295(1)(a)-(c) (emphasis added).  The requirements of 646A.295(1)(a)-(b) "must be met prior to the completion of the initial order for the automatic renewal or continuous service[,]" but the requirements of 646A.295(1)(c) "may be fulfilled after completion of the initial order." 646A.295(4).

67.    Additionally, Section 646A.295(2) of the ARL further provides:
> A person making automatic renewal or continuous service offers shall provide a toll-free telephone number, electronic mail address, a post-office address only when the person directly bills the consumer, or another cost-effective,

1
2
3

        timely and easy-to-use mechanism for cancellation that
        must be described in the acknowledgment required by
        subsection (1)(c) of this section.

ORS 646A.295(2).

4
5
6
7
8
9

     68.    The term "Person" as used in ORS 646A.295 means "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entity except bodies or officers acting under statutory authority of this state or the United States."  ORS 646.605; *see also* ORS 646A.293(4) ("'Person' has the meaning given that term in ORS 646.605[.]"). Defendant is a "person" under this definition.

10
11
12
13
14
15
16

     69.    Section 646A.293(1) of the ARL defines the term "Automatic renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."  Section 646A.293(3) similarly defines "Continuous service" as "a plan or arrangement in which a paid subscription or purchasing agreement continues until the consumer cancels the service."  The Sea Moss Refill Subscriptions constitute "automatic renewal" and/or "continuous service" plans under these definitions.

17
18
19
20
21
22
23
24
25
26

     70.    Pursuant to Section 646A.293(5) of the ARL, "Offer terms" means "the following clear and conspicuous disclosures: (a) That the subscription or purchasing agreement will continue until the consumer cancels. (b) The description of the cancellation policy that applies to the offer. (c) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal or continuous service plan or arrangement, and, if the amount of the charge will change, the amount to which the charge will change, if known. (d) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer. (e) The minimum purchase obligation, if any." ORS 646A.293(5)(a)-(e).

27
28

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED        23

71.    Section 646A.293(2) of the ARL defines the term "Clear and conspicuous," in relevant part, as "in larger type than the surrounding text, or in contrasting type, font or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."

72.    Finally, the ARL provides that where "a person sends goods, wares, merchandise or products to a consumer under a continuous service agreement or pursuant to an automatic renewal of a purchase without first obtaining the consumer's affirmative consent as required in [ORS 646A.295(1)], the goods, wares, merchandise or products shall for all purposes be deemed an unconditional gift to the consumer who may use or dispose of them in any manner the consumer sees fit without any obligation to the person including, but not limited to, requiring the consumer to ship, or bear the cost of shipping, any goods, wares, merchandise or products to the person." ORS 646A.295(5).

73.    As alleged below, Defendant's practices systematically violate Sections 646A.295(1)(a) and 646A.295(1)(b) of the ARL.

**1.    Defendant's Sea Moss Refill Subscription Enrollment Process**

74.    At all times, Defendant offered, and continues to offer, a Sea Moss Refill Subscription service for each one of their products.  However, Defendant enrolls consumers in the subscription without receiving their affirmative consent to the subscription.  When consumers select a discounted Sea Moss Product and add it to their cart, they are automatically set to enroll in a Sea Moss Refill Subscription unless they notice the discrete subscription tab at the bottom of the pre checkout page and click on it switching their purchase to a one-time purchase.

62.    As shown in the checkout flow step-by-step below, rather than seeking consumers' affirmative consent, Defendant preselects the recurring plan.  A consumer would only know they were being enrolled if they noticed the toggle,

1  which Defendant presents in one of the smallest fonts on each page it exists.

2  Defendants rely on unsuspecting consumers who do not realize that they are set to be

3  enrolled in the subscription to not click the tab, automatically enrolling them.



1

*Step 3*

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22
23
24
25
26
27
28

*Step 4*





1

***Step 4 – Fully Scrolled***



63.     Only if the consumer scrolls past the "Continue to Shipping" tab—which they need not do to checkout—are there miniscule hyperlinked terms in the footer that reveal the automatic renewal terms.  This is insufficient for conspicuous notice of those terms by any standard.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Step 5*





***Step 6[8]***



---

[8] As of September 11, 2025, Defendant appears to have added language above the "Pay Now," button that states: "By clicking 'Pay Now,' I agree to True Sea Moss's Terms of Sale and Privacy Policy. I also agree that I will be enrolled in a subscription, and that I will be billed on a recurring basis at the price and frequency specified in the order summary excluding the first month's discount unless and until I cancel. I understand that I can modify or cancel my subscription at any time by logging into my membership portal, accessing this webform, and e-mailing support@trueseamoss.com." However, this notice comes way too late and was not present at the time Plaintiffs made their purchase. Discovery will reveal when Defendant added this disclaimer to its website. Worse, it is still deficient.

---

64.    As shown, nowhere does Defendant even acknowledge or affirmatively bring to Plaintiff Drinovsky's attention that she was entering into a recurring subscription plan.  Indeed, Plaintiff Drinovsky had no idea she was.  The closest Defendant gets it to having the preselected "Switch to one time" toggle automatically preselected for a recurring subscription in one of the smallest fonts on the page.

65.    Defendant failed to comply with the ARL in two ways: (i) Defendant failed to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement was fulfilled, in violation of ORS 646A.295(1)(a); (ii) Defendant charged Plaintiff Drinovsky's and Class members' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of ORS 646A.295(1)(b).

> **2.    Defendant Fails To Clearly And Conspicuously Present The Sea Moss Refill Subscription Terms Before The Subscription Agreement Is Fulfilled And In Visual Proximity To The Request For Consent To The Offer.**

66.    First, the relevant portion of the Checkout Page does not present the complete "offer terms[,]" as defined by ORS 646A.293(5), in violation of Section 646A.295(1)(a) of the ARL.  For instance, with respect to cancellation, the relevant portion of the pre checkout page, *see* Step 2, *supra*, states "auto-refill in 30 days" and "manage it any time."  However, this pre-checkout page fails to mention a subscription and does not contain any explanation of *how* to cancel the subscription. It states that the subscription can be "manage[d] at anytime," but does not state exactly how consumers can manage the subscription.  There is no hyperlink to click. Indeed, it is in one of the smallest fonts on the page, away from anywhere the eye is drawn to, in the footer.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    67.    Furthermore, the checkout page has a discrete message below the cart

17 total that states that there is a "recurring charge for multiple items" but does not offer

18 any other information regarding the terms of the subscription or how to cancel.  In

19 fact, none of the checkout pages include the full terms of the subscription.

20    68.    Yet, prior to checkout, Defendant was obligated by law to place

21 consumers on notice of these aspects of Defendant's cancellation policy in

22 accordance with the ARL, which requires that companies provide such information

23 "in visual proximity … to the request for consent to the [automatic renewal] offer."

24 ORS 646A.295(1)(a).  Accordingly, because the Checkout Page does not present a

25 complete "description of the cancellation policy that applies to the offer[,]" *see* ORS

26 646A.293(5)(b), Defendant failed, and continues to fail, to satisfy that requirement,

27 in violation of Section 646A.295(1)(a) of the ARL.

28

---

69.     Second, at no point during the checkout process does Defendant require consumers to read or affirmatively agree to any terms of service associated with the Sea Moss Refill Subscriptions by requiring consumers to select or click a "checkbox" next to the automatic renewal offer terms or other similar mechanism to complete the checkout process.  Instead, consumers are automatically set to be enrolled in the refill subscription unless they affirmatively click the conspicuous "set to one time" tab on the pre-checkout page.  But the law does not require an affirmative "opt-out."  It requires an affirmative "opt-in."

70.     After the precheck out pages, consumers are not given another chance to opt out of the subscription on the subsequent pages.  Accordingly, when Defendant automatically renews customers' Sea Moss Refill Subscriptions, Defendant charges consumers' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of ORS 646A.295(1)(b).

## 9(b) Specific Fraud Allegations

71.     Although Defendant is in the best and exclusive position to know the true composition and contents of its Product, Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

(a)     **WHO**: Defendant Diva Fam, Inc., doing business as True Sea Moss.

(b)     **WHAT**: Defendant's conduct here was, and continues to be, fraudulent because it represented its products as being sold as a discount, when they were not. By representing a strike-through reference price that the Products were never actually sold at for a 90-day period, and likely longer, Defendant falsely represented that its Products were on sale when they never really were. Defendant's advertised false reference prices and advertised false discounts were material misrepresentations and made for the purpose of inducing consumers like Plaintiffs to make their purchase.  Furthermore, Defendant engaged in fraudulent auto-renewal practices by automatically enrolling consumers like Plaintiff Drinovsky in a Sea Moss Refill

Subscription without properly notifying them of the terms of the complete subscription terms at the appropriate time or getting their affirmative consent to enroll.  Defendant, as the owner and operator of its website, and entity responsible for its pricing practices, was aware of when, and for how long, it advertised its products as being on "sale."  Additionally, because it controls the functionality of its website, Defendant necessarily set its website to preselect subscription enrollment. For both, Defendant continued to conduct business while aware of its "discount" representations and subscription enrollment practices.

(c)    **WHEN**: Defendant engaged in fraudulent sales and subscription practices during the putative class periods, including prior to and at the time of Plaintiffs' and the Class Members' purchases.  Plaintiffs viewed the strike-through reference price representations on Defendant's online e-commerce store at the time of purchase, understanding them to mean that the Products were being sold at a lower price than they were typically sold at and were not tied to a Sea Moss Refill Subscription.

(d)    **WHERE**: Defendant's marketing messages were uniform and pervasive throughout California, Oregon and the United States and carried throughout material misrepresentations on its online e-commerce store.

(e)    **HOW**: Defendant made material misrepresentations of fact regarding the Product by representing that the Products were being sold at a discount when they were not.  Furthermore, Defendant automatically enrolled consumers in a Sea Moss Refill Subscription service without their consent and without notifying them of the complete terms of the subscription at the appropriate time.

(f)    **WHY:**  Defendant engaged in the material misrepresentations and omissions detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and/or pay a premium for Products based on the belief that they were being sold at a discount, and to induce consumers to enroll in a subscription service without their affirmative consent.

(g)    **INJURY**: Plaintiff and the members of the Classes purchased, and paid a premium, or otherwise paid more for the Product they otherwise would not have had they known the truth of Defendant's Products.  Plaintiff Drinovsky and Oregon Class members were fraudulently enrolled in a Sea Moss Refill Subscription service they did not consent to and were charged without their consent.

<u>**CLASS ALLEGATIONS**</u>

72.    ***Class Definition:*** Plaintiffs bring this matter on behalf of themselves, and all similarly situated in the following Classes (collectively, the "Classes"):

(a)    ***Nationwide False Sales Class***. All natural persons in the United States who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, purchased any of Defendant's Products advertised at a discounted price (the "Nationwide False Sales Class" or "Nationwide Class").

(b)    ***California False Sales Subclass***. All natural persons in the State of California who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, purchased any of Defendant's Products advertised at a discounted price (the "California False Sales Subclass" or "California Subclass").

(c)    ***Oregon False Sales Subclass.***  All natural persons in the State of Oregon who, within the applicable statute of limitations periods, up to and including the date of final judgment in this action, purchased any of Defendant's Products advertised at a discounted price (the "Oregon False Sales Subclass" or "Oregon Subclass").

(d)    ***Oregon ARL Class.***  All natural persons in the State of Oregon who, within the applicable statute of limitations periods, up to and including the date of final judgment in this action, were charged and paid automatic renewal fee(s) in connection with Defendant's "Auto-Refill" subscription program following their initial purchase of one or more of Defendant's Products advertised at a discounted price (the "Oregon ARL Class" or the "Oregon Class").

73. Excluded from the Classes and Subclasses are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent have a controlling interest and its current or former employees, officers, and directors; and (3) Plaintiffs' counsel and Defendant's counsel.

74. **_Numerosity_**. Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of people who purchased the Products who have been injured by Defendant's false and misleading representations. While the exact number of members of each Class is unknown to Plaintiffs at this time, such information can be ascertained through appropriate discovery from records maintained by Defendant and its agents.

75. **_Commonality and Predominance_**. The questions of law and fact common to the Classes, which predominate over any questions that may affect individual class members include, but are not limited to:

      i.      Whether Defendant is responsible for the conduct alleged herein, which was uniformly directed at all consumers who purchased Defendant's Products;

      ii.     Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

      iii.    Whether Defendant made false and/or misleading statements concerning the Products that were likely to deceive a reasonable consumer and/or the public;

      iv.    Whether Defendant's Sea Moss Products were sold at the strike-through reference price within 90 days of Plaintiffs' and Class Members' purchases.

      v.     Whether Defendant's Sea Moss Refill Subscriptions constitute "Automatic renewal[s]" and/or "Continuous service[s]" within the meaning of ORS 646A.293(1) and (4).

vi.     Whether Defendant failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer, in violation of ORS 646A.295(1)(a).

vii.    Whether Defendant charged Plaintiffs' and Class members' Payment Method for an automatic renewal or continuous service without first obtaining their affirmative consent to the automatic renewal offer terms or continuous service offer terms in violation of ORS 646A.295(1)(b);

viii.   Whether Plaintiffs and the Class are entitled to injunctive relief;

ix.     Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

76.   ***Typicality***. The claims of the named Plaintiffs are typical of the claims of the members of the Classes because the named Plaintiffs, like other members of the Classes, purchased the Products, relying on the representations and omissions made by Defendant online that the Product was being sold at a discount from its false reference pricing and were enrolled in a recurring subscription.

77.   ***Adequate Representation***. Plaintiffs have retained, and are represented by, qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action.  Neither Plaintiffs, nor their counsel, have any interest adverse to, or in conflict with, the interests of the absent members of the Classes. Plaintiffs are able to fairly and adequately represent the interest of the Classes.  Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Classes and will vigorously pursue those claims.  If necessary, Plaintiff may seek leave of this Court to amend this complaint to include additional Class Representatives to represent the Classes or additional claims as may be appropriate.

78.    ***Superiority***. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable.  Even if every member of the Classes could afford to pursue individual litigation, the Court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Classes. Plaintiffs anticipate no difficulty in the management of this action as a class action.  Class-wide relief is essential to compel compliance with California's consumer protection laws.

## CAUSES OF ACTION

### COUNT I
**Violation of False Advertising Law ("FAL")**
**Bus. & Profs. Code §§ 17500, *et seq.***
**(On Behalf of the Nationwide Class and the California Subclass)**

79.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

80.    Plaintiff Trim bring this claim individually and on behalf of members of the Nationwide Class and California Subclass against Defendant.

81.    California's FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading

1    and which is known, or which by the exercise of reasonable care should be known to

2    be untrue or misleading."

3         82.    The FAL further provides that "no price shall be advertised as a former

4    price of any advertised thing, unless the alleged former price was the prevailing

5    market price … within three months next immediately preceding the publication of

6    the advertisement or unless the date when the alleged former price did prevail is

7    clearly, exactly, and conspicuously stated in the advertisement." *See* Cal. Bus. &

8    Prof. Code § 17501.

9         83.    Defendant has violated Sections 17500 and 17501 of the California

10   Business and Professions Code.

11        84.    Defendant has violated, and continues to violate, section 17500 of the

12   Business and Professions Code by disseminating untrue and misleading

13   advertisements to Plaintiff and Class members.

14        85.    As alleged more fully above, Defendant advertises purported former

15   prices along with discounts.  Defendant does this, for example, by crossing out a

16   higher price and displaying it next to a lower, discounted price (e.g., "**$28.00**

17   $40.00"), and by representing that the purported price reduction represents a specific

18   percentage discount off the Product's regular price (e.g., "30% OFF TODAY").

19   Reasonable consumers would understand prices denoted as regular prices from

20   which time-limited discounts are calculated to denote "former" prices, *i.e.*, the prices

21   that Defendant charged before the time-limited discount went into effect.

22        86.    The strikethrough prices advertised by Defendant are not Defendant's

23   regular prices.  In fact, those prices are not Defendant's regular prices (*i.e.*, the price

24   you usually have to pay to get the product in question), because there is consistently

25   a heavily-advertised promotion ongoing entitling consumers to a discount.

26   Moreover, for the same reasons, those strikethrough prices were not the true former

27   prices of the Products, given the existence of perpetual sales on Defendant's

28   Website.  Accordingly, Defendant's statements about the former prices of its

Products, and its statements about its discounts from those former prices, were untrue and misleading. In addition, Defendant's statements that its discounts were available "TODAY" are also false and misleading because they imply that the discount price would only be available for a limited amount of time, giving consumers a sense of urgency in terms of taking advantage of such time-limited sale, when in fact the purported sales price is perpetually available.

87.    In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

88.    Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on, these statements when purchasing the Products. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decision.

89.    Such a deceptive marketing practice misled consumers by creating a false impression that the Products were of a higher value and worth more than their actual worth, and that the purported sales prices attributable to the Products was time-limited.

90.    Defendant's actions in violation of the FAL were false and misleading such that the general public was likely to be deceived.

91.    Plaintiffs and the members of the Nationwide Class and California Subclass were deceived by Defendant's price-related statements and omissions made

online when they purchased the Products, and other consumers and members of the public were also or are likely to be deceived as well. Any reasonable consumer would be misled by Defendant's false and misleading statements and material omissions. Plaintiffs and other members of the Classes relied on Defendant's statements and omissions to their detriment.

92. In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to buy the Products.

93. Defendant's misrepresentations relating to price were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the Class.

94. As a direct and proximate result of these acts, consumers have been and are being harmed. Indeed, Plaintiffs and members of the Nationwide Class and California Subclass suffered injury and actual out-of-pocket losses because: (a) Plaintiffs and Class members would not have purchased the Products if they had known the true facts regarding the value and prevailing market price of the Products; (b) Plaintiffs and members of the Classes paid a price premium due to the misrepresentations about the Products; and/or (c) the Products did not have the represented quality or value by virtue of being offered at a false higher price.

95. Plaintiffs, individually and on behalf of all similarly situated members of the Nationwide Class and California Subclass, seek injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective disclosures to consumers. Plaintiffs and members of the Classes are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs.

**COUNT II**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**California Civil Code §§ 1750, *et seq.***
**(On Behalf of the Nationwide Class and the California Subclass)**

96.   Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

97.   Plaintiff Trim bring this claim individually and on behalf of members of the Nationwide Class and California Subclass against Defendant.

98.   This cause of action is brought pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750-1785.

99.   Plaintiffs and the members of the Nationwide Class and California Subclass are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiffs and members of the Classes sought or acquired Defendant's goods for personal, family, or household purposes.

100.   The sea moss supplement Products marketed and sold by Defendant through its Website are "goods" within the meaning of Cal. Civil Code § 1761(a). The purchases by Plaintiffs and members of the Classes are "transactions" within the meaning of Cal. Civil Code § 1761(e).

101.   The acts and practices of Defendant as described above were intended to deceive Plaintiffs and the members of the Classes as described herein, and have resulted, and will result, in damages to Plaintiffs and Class members.  These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's acts and practices constitute representations or omissions concerning the regular, former, and sales prices associated with the Products deceiving that the Products have characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); and (c) Defendant's acts and practices

constitute "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions," in violation of Cal. Civil Code § 1770(a)(13).

102.   Specifically, Defendant violated, and continues to violate, Cal. Civil Code § 1770(a)(5) by representing that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for the Products.

103.   Defendant violated, and continues to violate, Cal. Civil Code § 1770(a)(9) by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

104.   Finally, Defendant violated, and continues to violate, Cal. Civil Code § 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website, including by (1) misrepresenting the regular price of Products on its website, (2) advertising discounts and savings that are exaggerated or nonexistent, and (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available.

105.   Defendant's representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

106.   Defendant's misrepresentations and omissions regarding price were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing the Products.  Defendant's misrepresentations were a substantial factor in Plaintiffs' purchasing decisions.

107.   In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to buy the Products.

108.   Defendant's misrepresentations relating to price were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the Class.

109.   As a direct and proximate result of these acts, consumers have been and are being harmed.  Indeed, Plaintiffs and members of the Nationwide Class and California Subclass suffered injury and actual out-of-pocket losses because: (a) Plaintiffs and Class members would not have purchased the Products if they had known the true facts regarding the value and prevailing market price of the Products; (b) Plaintiffs and members of the Classes paid a price premium due to the misrepresentations about the Products; and/or (c) the Products did not have the represented quality or value by virtue of being offered at a false higher price.

110.   Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff Trim, on behalf of herself and all other members of the Nationwide Class and California Subclass, seek injunctive relief prohibiting Defendants from continuing their unlawful practices in violation of the CLRA.

111.   In compliance with the provisions of California Civil Code § 1782, Plaintiff Trim sent written notice to Defendant on May 22, 2025, informing Defendant of their intention to seek damages under California Civil Code § 1750. The letter was sent via certified mail, return receipt requested, and it advised Defendant that they were in violation of the CLRA, described the nature of those violations, and demanded that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter expressly stated that it was sent on behalf of Plaintiffs and "all other persons similarly situated."  The letter was delivered to Defendant on May 27, 2025, as reflected by the proof of delivery issued by the United States Postal Service. Defendant did not take action to rectify the injuries caused by its unlawful conduct as described in the 5/22/25 letter and above on a classwide basis within 30 days of receipt of the letter.

112.   Accordingly, Plaintiff Trim, individually and on behalf of the proposed California Class, seek monetary damages from Defendants as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

113.   Plaintiffs and Members of the Classes also seek actual and punitive damages, restitution, reasonable costs and attorneys' fees, and to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

## COUNT III
### Violation of California's Unfair Competition Law ("UCL")
### Bus. & Profs. Code §§ 17200, *et seq.*
### (On Behalf of the Nationwide Class and the California Subclass)

114.   Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

115.   Plaintiff Trim bring this claim individually and on behalf of members of the Nationwide Class and California Subclass against Defendant.

116.   Defendant is subject to the UCL, Bus. & Prof. Code §§ 17200 *et seq*. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."  The UCL also provides for injunctive relief and restitution for violations.

117.   "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

118.   Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation.  *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

119.   Defendant has violated the UCL's **unlawful prong** by violating, *inter alia*, 16 C.F.R. § 233.1(a)-(b); Cal. Civ. Code §§ 1770(a)(5), (9), (13); and Cal. Bus. & Prof. Code §§ 17500, *et seq*., including Bus. & Prof. Code § 17501.

120.    Defendant's misrepresentations and other conduct, described herein, also violated the **unfair prong** of the UCL because the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's conduct is unfair in that the harm to Plaintiffs and members of the Classes arising from Defendant's conduct outweighs the utility, if any, of those practices.

121.    Defendant's practices as described herein are of no benefit to consumers, who are tricked into believing that the Products are of a higher grade, quality, worth, and/or value than they actually are.  Defendant's practice of injecting misinformation into the marketplace about the value of its Products is unethical and unscrupulous, especially because consumers trust companies like Defendant to provide accurate information about their Products.  Taking advantage of that trust, Defendant misrepresents the value of its Products to increase its sales.  Consumers reasonably believe that Defendant is an authority on the value of sea moss and therefore reasonably believe Defendant's representations that its Products are of a higher grade, quality, worth, and/or value than they actually are.

122.    Defendant's conduct described herein violated the **fraudulent** prong of the UCL by representing that the Products were of a higher grade, quality, worth, and/or value, when in fact they were not.

123.    Plaintiffs and members of the Classes are not sophisticated experts with independent knowledge of the value of sea moss supplements and they acted reasonably when they purchased the Products based on their belief that Defendant's representations were true.

124.    Defendant knew or should have known, by virtue of being in control of the price setting on its website that its representations about the Products were untrue and misleading.  Nonetheless, Defendant continued to represent to consumers that it offered its Products at a discount from a reference price that was never set.

125.   As a direct and proximate result of these acts, consumers have been and are being harmed.

126.   Pursuant to California Business and Professional Code §17203, Plaintiff and the Members of the Classes seek restitution, injunctive relief, attorneys' fees, and all other relief that the Court deems proper.

**COUNT IV**
**Violations of Oregon's Unlawful Trade Practices Act ("UTPA"),**
**ORS §§ 646.608(1)(j), (s), (e), (i), (p), (ee)**
**(On Behalf of the Oregon False Sales Subclass)**

127.   Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

128.   Plaintiff Kristine Drinovsky brings this claim individually and on behalf of the members of the proposed Oregon Subclass against Defendant.

129.   By using false and misleading pricing representations, Defendant has violated the Oregon Unlawful Trade Practices Act ("UTPA"), ORS §§ 646.605, *et seq*.

130.   The Oregon UTPA, which was enacted in 1971 and is codified at ORS 646.605-646.656, is remedial statutory scheme enacted as a comprehensive statute for the protection of consumers from unlawful trade practices.  The UTPA prohibits unlawful practices in the course of the person's business, vocation, or occupation with respect to both general and specific conduct.  Specifically proscribed conduct is set forth under Section 646.608(1), which has 79 subsections and many of which refer to other provisions of the Oregon Revised Statutes.  *See* O.R.S. 646.608(1)(a)–(aaaa).

131.   The UTPA prohibits unlawful business and trade practices.  O.R.S. § 646.608.  Under the UTPA, "[a] person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:"

- "Represents that … goods … have … characteristics … that the … goods … do not have," O.R.S. § 646.608(1)(e);

- "Advertises … goods … with intent not to provide the real estate, goods or services as advertised," O.R.S. § 646.608(1)(i);

- "Makes false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions," O.R.S. § 646.608(1)(j);

- "Makes any false or misleading statement about a … promotion used to publicize a product," O.R.S. § 646.608(1)(p);

- "Makes false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services," O.R.S. § 646.608(1)(s); and

- "Violates ORS 646.883 (Price comparison in advertisement prohibited) or 646.885 (Use of terms in advertisement containing price comparison)," O.R.S. § 646.608(1)(ee).

132.  The UTPA authorizes private civil actions.  Pursuant to Section 646.638(8)(a) of the UTPA, "a person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608 … may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater."  ORS 646.638(1); *see also* ORS 646.638(8). In a class action, plaintiffs may recover statutory damages only if they suffered an ascertainable loss "as a result of a reckless or knowing use or employment" of an unlawful trade practice.  ORS 646.638(8)(a).

133.  Defendant is a "Person" as defined in ORS 646.605(4).  The definition of "person" includes "corporations," and as alleged above, Defendant is a corporation.

134.  Defendant engages in the conduct of "trade" and "commerce" under the UTPA. Defendant does this by advertising, offering, and distributing, by sale, goods

in a manner that directly and indirectly affects people of the state of Oregon. *See* O.R.S. § 646.605(8). Defendant advertises and sells supplements containing sea moss in Oregon, and serves a market for its Products in Oregon. Due to Defendant's actions, its Products have been marketed and sold to consumers in Oregon, and harmed consumers in Oregon, including Plaintiff Drinovsky. Defendant's unlawful methods, acts and practices described above were committed in the course of Defendant's business. *See* O.R.S. § 646.608(1).

135.    The sea moss supplements (the "Products") advertised, offered, and sold by Defendant through its Website are "goods" as defined by O.R.S. § 646.605(6)(e) because the Products are or may be obtained primarily for personal, family, or household uses. Plaintiff Drinovsky and the Oregon Class purchased the Products advertised by Defendant for personal, family, or household purposes.

136.    As alleged in greater detail above, Defendant makes "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." O.R.S. § 646.608(1)(j). Defendant does this by advertising fake list prices and fake sales. By advertising regular list prices and supposedly time-limited discounts, Defendant's Website creates an illusion that consumers are receiving a limited-time discount if they buy now. In truth, however, Defendant's Products are always on sale, and these sales persist indefinitely. As a result, Defendant's listed prices are not Defendant's true prices, or former prices, or the prevailing market prices for Defendant's Products. Nor are its purported price reductions true price reductions. Because Defendant always offers sitewide discounts, as well as discounts on certain items, it does not ordinarily or typically sell its Products at the purported regular prices.

137.    As alleged in greater detail above, Defendant also makes "false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services." O.R.S. § 646.608(1)(s). As described above, Defendant's website purports to advertises its Products with regular list prices, and

discounted "sale" prices. But Defendant's listed prices are not Defendant's true prices, former prices, or prevailing market prices for those Products. Likewise, the purported price reductions are not true price reductions.

138.   As alleged in greater detail above, Defendant also "advertises … goods … with intent not to provide the … goods … as advertised," O.R.S. § 646.608(1)(i). Defendant advertises Products at a sale price, or discount, as compared to a regular list price. But the purported discounts that Defendant advertises are not the true discounts that the customer receives. And Defendant's listed prices are not Defendant's true prices, former prices, or prevailing market prices for those Products. In many cases, the customer receives no discount at all.

139.   As alleged in greater detail above, Defendant also represents that its goods have characteristics that they do not have. *See* O.R.S. § 646.608(1)(e). Defendant represents that the value of its Products is greater than it actually is by advertising fake discounts for the Products.

140.   As alleged in greater detail above, Defendant false and misleading statements about the promotions used to publicize its Products. *See* O.R.S. § 646.608(1)(p). As described above, Defendant advertises Products at a sale price, or discount, as compared to the regular prices. But the purported discounts that Defendant advertises are not the true discounts that the customer receives. In many cases, the customer receives no discount at all. In addition, as described above, Defendant advertises limited-time discounts that are not in fact limited in time.

141.   The UTPA also prohibits sellers from using misleading price comparisons to advertise their products. *See* O.R.S. § 646.608(1)(ee) (citing O.R.S. §§ 646.884 and 646.885). The UTPA expressly prohibits sellers from including "a price comparison in an advertisement unless" "[t]he seller clearly and conspicuously identifies in the advertisement the origin of the price that the seller is comparing to the seller's current price." O.R.S. § 646.883. Use of term "sale" is deemed to identify "the origin of the price that the seller is comparing to the seller's current

price as the seller's own former price, or in the case of introductory advertisements, the seller's future price." O.R.S. § 646.885. And, unless otherwise stated, use of the terms "discount," "_____ percent discount," "$_____ discount," "_____ percent off," and "$_____ off" are "considered to identify the origin of the price that the seller is comparing to the seller's current price as the seller's former price, or in the case of introductory advertisements, the seller's future price." O.R.S. § 646.885.

142.    As alleged in greater detail above, Defendant uses misleading price comparisons. For example, Defendant uses strikethrough pricing without clearly and conspicuously identifying in the advertisement the origin of the price that the seller is comparing to the current price. Defendant's strikethrough pricing does not contain any disclosures at all about the origin of the strikethrough price.

143.    In addition, as alleged in greater detail above, Defendant uses the term "___% Off" in its promotions, even when the Products are not offered at a discount as compared to the former price (or in the case of introductory products, a future price). Defendant also makes no disclosure indicating that the price comparisons are to something other than the former or future price.

144.    Defendant's representations of regular prices, sales, and discounts on its Website are "advertisements" as defined by O.R.S. § 646.881(1). These representations about the prices, sales, and discounts were made in connection with the sales of Defendant's Products.

145.    Defendant's use of list prices, sitewide sales, and advertised discounts are "price comparisons" as defined by O.R.S. § 646.881(2). These statements make a claim that the current price is reduced as compared to a Product's typical or former price.

146.    Defendant's unlawful methods, acts and practices described above were "willful violations" of O.R.S. § 646.608 because Defendant knew or should have known that its conduct was a violation, as defined by O.R.S. § 646.605(10). Indeed, Defendant is aware that the representations regarding reference and discount price

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    51

were false and misleading in violation of Oregon's consumer protection laws and prohibitions of false advertising based its knowledge of the perpetual sales on its Website and that the reference price does not correlate with any former price advertised on its Website prior to the start of such perpetual sales.

147.   Defendant, at all relevant times, had a duty to disclose that the discounts were not real, that the sales persisted and were not limited in time, and that the regular prices were not the true regular prices of the Products.  Defendant had a duty because (1) Defendant had exclusive knowledge of material information that was not known to Plaintiff and the Class; (2) Defendant concealed material information from Plaintiff and the Class; and (3) Defendant made partial representations which were false and misleading absent the omitted information.

148.   Defendant's misrepresentations and nondisclosures deceive and have a tendency to deceive a reasonable consumer and the general public.

149.   Defendant's misrepresentations and nondisclosures are material.  A reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

150.   Defendant engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged here, which are unlawful under O.R.S. § 646.608.

151.   As a direct, substantial and/or proximate result of Defendant's conduct, Plaintiff and Class members suffered ascertainable losses and injury to business or property.

152.   Plaintiff Drinovsky and members of the Oregon Class would not have purchased the Products at the prices they paid, if they had known that the advertised prices and discounts were false.

153.   Plaintiff Drinovsky and members of the Oregon Class paid more than they otherwise would have paid for the Products they purchased from Defendant. Defendant's false pricing scheme fraudulently increased demand from consumers.

154.    The Products that Plaintiff and Class members purchased were not, in fact, worth as much as Defendant represented them to be worth.

155.    Plaintiff Drinovsky seeks, on behalf of herself and the Class: (1) the greater of statutory damages of $200 or actual damages; (2) punitive damages; (3) appropriate equitable relief and/or restitution; and (4) attorneys' fees and costs. O.R.S. § 646.638(3); O.R.S. § 646.638(8).

156.    The unlawful acts and omissions described here are, and continue to be, part of a pattern or generalized course of conduct.  Defendant's conduct is ongoing and is likely to continue and recur absent a permanent injunction.  Accordingly, Plaintiff seeks an order enjoining Defendant from committing such unlawful practices.  O.R.S. § 646.638(1); O.R.S. § 646.638(8)(c); O.R.S. § 646.636.

157.    The balance of the equities favors the entry of permanent injunctive relief against Defendant.  Plaintiff, the Class members, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. Plaintiff, the Class members, and the general public lack an adequate remedy at law. A permanent injunction against Defendant is in the public's interest.  Defendant's unlawful behavior is ongoing as of the date of the filing of this Complaint.  If not enjoined by order of this Court, Defendant will or may continue to injure Plaintiff and Oregon consumers through the misconduct alleged.  Absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, it is capable of repetition and is likely to reoccur.

158.    This action was brought "within one year after the discovery of the unlawful method, act or practice."  O.R.S. § 646.638.

159.    The applicable limitations period is expansive and extends back decades based on the "discovery" rule in the UTPA at O.R.S. § 646.638(6).

160.    Plaintiff and the Class members did not know, and could not have known, that these reference prices and discount representations were false.

161.   Absent class members of the subclass are still not aware, at the time of the filing of this Complaint, of Defendant's false discount advertising scheme.  By Defendant's design, the false advertising scheme by its very nature is hidden and difficult for the typical consumer to discover.  Consumers who shop on Defendant's website do not know the true historical prices or sales histories of the Products that they have viewed and purchased.  They do not know that the discounts offered are false, or that the false discounting practices extend to all of Defendant's Products. Subclass members have not discovered, and could not have reasonably discovered, Defendant's fake discounting scheme.

162.   Absent class members will learn of the scheme for the very first time upon court-ordered class notice in this case.

**COUNT V**
**Violations of Oregon's Unlawful Trade Practices Act ("UTPA"),**
**ORS § 646.608(1)(ttt)**
**(On Behalf of the Oregon ARL Class)**

163.   Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

164.   Plaintiff Kristine Drinovsky brings this claim individually and on behalf of the members of the proposed Oregon Class against Defendant.

165.   Defendant is a "Person" as defined in ORS 646.605(4).

166.   Defendant's "Auto-Refill" program constitutes "goods or services" as defined by ORS 646.605(6)(a), because it is an automatically renewing plan or arrangement in which consumers are automatically charged for and receive shipments of one or more sea moss supplement products every 30 days until cancellation.  Defendant's Auto-Refill subscriptions, like the sea moss supplement products they concern, constitute "goods" and/or "services" as defined by O.R.S. § 646.605(6)(e) because both the Auto-Refill subscription and the Products they concern are or may be obtained primarily for personal, family, or household uses.

167.    "The UTPA prohibits businesses from charging customers other types of fees when they are not disclosed in the particular way that the law requires." *Stewart v. Albertson's, Inc.*, 308 Or. App. 464, 492 n.17, *review denied*, 368 Or. 138 (2021); *Scharfstein v. BP West Coast Products, LLC*, 292 Or. App. 69, 89, *review denied*, 363 Or. 815 (2018) (same); *see also Miller v. WinCo Foods, LLC*, 2020 WL 6693149, at *7 (D. Or. Sept. 3, 2020), *report and recommendation adopted*, 2020 WL 6685697 (D. Or. Nov. 12, 2020); *Russell v. Ray Klein, Inc.*, 2019 WL 6137455, at *4 (D. Or. Nov. 19, 2019); *Tri-W. Const. Co. v. Hernandez*, 43 Or. App. 961, 972 (1979); *Sanders v. Francis*, 277 Or. 593, 598-99 (1977); *Rollins v. Wink Labs, Inc.*, 2021 WL 1976082, at *5 (D. Or. Feb. 22, 2021).

168.    As explained below, at all relevant times, Defendant violated, and continues to violate, the UTPA's proscription against engaging in unlawful conduct by charging customers certain types of fees without first disclosing the required pre-purchase information and obtaining authorization in the particular way that the law requires.

169.    Specifically, Defendant's actions are "unlawful" within the meaning of the UTPA because they violated Oregon's Automatic Renewal Law (the "Oregon ARL"), ORS 646A.292-646A.295, in direct violation of Section 646.608(1)(ttt) of the UTPA.  In particular, subsequent to consumers' (including Plaintiff Drinovsky's and Oregon Class members') initial purchases of the purportedly discounted Products from Defendant's Website,

170.    Defendant automatically charged subscription fees to consumers' Payment Methods, notwithstanding Defendant's uniform and systematic failure to provide legally required information at the point of purchase or obtain consumers' affirmative consent to an agreement containing the automatic renewal offer terms. As is explained in the above paragraphs of this complaint, which are incorporated herein by reference, by doing so, Defendant violates multiple provisions of Oregon's ARL.

171.   For instance, Defendant violated, and continues to violate, the Oregon ARL because, at all relevant times, it failed, and continue to fail, to: (a) provide the auto-renewal terms associated with the Auto-Refill subscriptions in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity to the request for consent to the offer, in violation of ORS 646A.295(1)(a); and (b) obtain the affirmative consent of Plaintiff Drinovsky and the Oregon Class to those terms before charging their Payment Methods, in violation of ORS 646A.295(1)(b).

172.   Each of these acts and practices constitutes an independent violation of the Oregon ARL, and thus an independent violation of the Section 646.608(1) of the UTPA.

173.   Indeed, each instance of Defendant's noncompliance with the Oregon ARL is a direct violation of UTPA.  See ORS 646.608(1)(ttt) ("(1) A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following: … (ttt) Violates a provision of ORS 646A.295 (Prohibited actions).").

174.   As discussed above, Defendant was prohibited from posting automatic renewal charges to Plaintiff Drinovsky's and Oregon Class members' Payment Methods without first adequately disclosing to the consumer the automatic renewal offer terms associated with the Auto-Refill subscriptions and obtaining the consumer's affirmative consent to the agreement containing those terms.  *See* ORS 646A.295(1)(a)-(b) ("It is unlawful for a person that makes an automatic renewal or continuous service offer to a consumer in this state to do any of the following:  (a) Fail to present the automatic renewal offer terms … in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity … to the request for consent to the offer.  (b) Charge the consumer's [Payment Method] for an automatic renewal … without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal

offer terms or continuous service offer terms"). Nevertheless, Defendant failed to do either before charging Plaintiff Drinovsky and Oregon Class members in connection with the Auto-Refill subscriptions, in violation of the Oregon ARL.

175. Thus, Defendant "failed to disclose the legally required information and assessed a … fee in violation of the UTPA." *Scharfstein v. BP W. Coast Prod., LLC*, 292 Or. App. 69, 90 (2018). "In doing so, [Defendant] illegally charged [its] customers [recurring subscription fees], thereby causing the ascertainable loss." *Id*.; *see also Stewart v. Albertson's, Inc.*, 308 Or. App. 464, 492 n.17, *review denied*, 368 Or. 138 (2021); *Miller v. WinCo Foods, LLC*, 2020 WL 6693149, at *7 (D. Or. Sept. 3, 2020), *report and recommendation adopted*, 2020 WL 6685697 (D. Or. Nov. 12, 2020); *Rollins v. Wink Labs, Inc.*, 2021 WL 1976082, at *5 (D. Or. Feb. 22, 2021); *Russell v. Ray Klein, Inc.*, 2019 WL 6137455, at *4 (D. Or. Nov. 19, 2019); *Wright v. Kia Motors Am. Inc.*, 2007 WL 316351, at *3 (D. Or. Jan. 29, 2007); *Tri-W. Const. Co. v. Hernandez*, 43 Or. App. 961, 972 (1979); *Sanders v. Francis*, 277 Or. 593, 598-99 (1977).

176. Moreover, pursuant to the ARL, all Products received from Defendant in violation of the ARL "shall for all purposes be deemed unconditional gift[s] to the consumer[s.]" ORS 646A.295(5). In other words, once Defendant tendered, and Plaintiff Drinovsky and Oregon Class members received the "goods, wares, merchandise or products" of the Auto-Refill subscriptions (*i.e.*, the Products) in continuous 30 day increments following their initial Product purchases, Plaintiff and Class members assumed title and ownership over such goods as their property, at which point Plaintiff and Class members were vested with the right to "use or dispose of them in any manner the[y] see[] fit without any obligation to [Defendants.]" *Id*.

177. Thus, Plaintiff Drinovsky has sustained an ascertainable loss of money and property as a result of Defendant's use or employment of methods, acts, or practices declared unlawful by ORS 646.608(1)(ttt) (*i.e.*, Defendants' conduct in

violation of Oregon's ARL).

178.    Because Defendant illegally charged Plaintiff Drinovsky and the Oregon Class unlawful fees in connection with the Auto-Refill subscriptions in violation of the Oregon ARL, Plaintiff Drinovsky and Oregon Class members are entitled to recover statutory damages of $200 per violation of the UTPA under ORS 646.608(1)(ttt). *See* ORS 646.638(1) and (8)(a) (class members can recover "actual damages or statutory damages of $200, whichever is greater").

179.    In the alternative, Defendant's unlawful conduct as described above caused Plaintiff Drinovsky's and Oregon Class members' ascertainable loss because Defendant's acts and practices were intended to deceive Plaintiff and the Class, and – as a result of Plaintiff Drinovsky's and Oregon Class members' reasonable reliance on Defendant's omissions of material offer terms required to be disclosed by the Oregon ARL – they have resulted, and will continue to result, in damages to Plaintiff Drinovsky and the Oregon Class in the form of ascertainable loss on money and property.

180.    As a direct and proximate result of Defendant's unlawful practices described herein, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiff Drinovsky and the Oregon Class in the form of recurring payments collected from Plaintiff and Class members in connection with their Auto-Refill subscriptions. Defendant has profited from its unlawful acts and practices in the sum total amount of such recurring payments that were collected by Defendant during the relevant time period, and any and all interest accrued thereon. If Defendant had complied with the Oregon ARL, Defendant would not have made the unlawful charges, and would not have obtained these monies from Plaintiff and the Oregon Class.

181.    Defendant's violations of the UTPA under ORS 646.608(1)(ttt) as described above were willful, as well as reckless and/or knowing, because, at the time it committed the violations at issue, Defendant knew or should have known that

its actions violated the Oregon UTPA.

182. Accordingly, Plaintiff Drinovsky, individually and on behalf of similarly situated Oregon consumers, seeks all monetary and non-monetary relief permitted by ORS 646.605 *et seq*., including ORS 646.636 and ORS 646.638(1) and (8), including equitable relief, actual damages or statutory damages of $200 per violation (whichever is greater), and pre- and post judgment interest, along with any other appropriate equitable relief deemed necessary or proper.

183. Further, Drinovsky Daly and the Oregon Class seek recovery of punitive damages from Defendant because Defendant's conduct was reprehensible. Defendant inflicted economic injury upon Plaintiff and the proposed Class in an intentional manner by, for instance, pre-selecting the "Auto-Refill" subscription option (*i.e.*, the default option) during the checkout process, requiring that consumers take affirmative action to opt-out of, rather than opt-in to, the Auto-Refill subscription, and omitting disclosures explaining that completion of the checkout process will result in enrollment in Defendant's automatic renewal process while also deliberately using ambiguous and inconspicuous language in connection with the opt-out process (namely, the inconspicuous "Switch to one time" text and adjacent toggle button), and creating or causing to exist dark patterns on Defendant's Website in order to: (1) trick users into unwittingly signing up for recurring bills in connection with the automatically renewing Amazon Subscriptions; and (2) prevent user unsubscription from the Auto-Refill program by adopting complex cancellation procedures to increase the friction in the subscription cancellation process. In other words, the user interface and experience of Defendant's Website is fundamentally designed to enhance accidental sign-ups and prevent intentional cancellation, thereby ensuring continued revenues from consumers by trapping them in the ongoing subscription purchase.

184. Defendant utilized its singular control over the Website and Auto-Refill program, and their exclusive knowledge of their omitted or inadequately disclosed

policies applicable to subscribers, to induce Plaintiff Drinovsky and the Oregon Class to purchase the Products and unwittingly enroll in the automatically renewing Auto-Refill subscriptions as opposed to a one-time purchase or enrollment in alternative automatic renewal programs for similar health supplement products offered by competitors that feature similar benefits and content and are sold at similar and/or lesser price points.

185.   Under ORS 646.638(3), Plaintiff Drinovsky and Oregon Class members are also entitled to recover their reasonable attorney fees from Defendant for its violations of Oregon law as detailed herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a)    For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiffs as representative of the Classes, and Plaintiffs' Counsel as Class Counsel;

b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

c)    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e)    For prejudgment interest on all amounts awarded;

f)    For an order of restitution and all other forms of equitable monetary relief;

g)    For injunctive relief as pleaded or as the Court may deem proper;

h)    For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

1

Dated:  October 10, 2025

**BURSOR & FISHER, P.A**.

2

By:  <u>  /s/ *Neal J. Deckant*      </u>
Neal J. Deckant

3

4

Neal J. Deckant (State Bar No. 322946)

5

Julia K. Venditti (State Bar No. 332688)
Joshua B. Glatt (State Bar No. 354064)

6

1990 North California Blvd., 9th Floor

7

Walnut Creek, CA 94596
Telephone: (925) 300-4455

8

Facsimile:  (925) 407-2700

9

E-mail: ndeckant@bursor.com
        jvenditti@bursor.com

10

        jglatt@bursor.com

11

*Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CLRA VENUE DECLARATION</u>

2      I, Neal J. Deckant, declare as follows:

3      1.      I am an attorney at law licensed to practice in the State of California and

4 a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel

5 of record for Plaintiffs.  Plaintiff Trim alleges that she resides in Downey, California.

6 Plaintiff Drinovsky alleges that she resides in Hillsborough, Oregon.  I have personal

7 knowledge of the facts set forth in this declaration and as called as a witness, I could

8 and would completely testify thereto under oath.

9      2.      The Complaint filed in this action is filed in the proper place for trial

10 under Civil Code Section 1780(d) in that a substantial portion of the events alleged

11 in the Complaint occurred in the Central District of California, as Plaintiff Trim

12 alleges that she purchased the Product from her home while in this District.

13 Additionally, Defendant allegedly advertised, marketed, manufactured, distributed,

14 and/or sold the Product at issue to Class Members from this District.

15      3.      I declare under penalty of perjury under the laws of the State of

16 California and the United States that the foregoing is true and correct, and that this

17 declaration was executed at Walnut Creek, California this, October 10, 2025.

18

19                          */s/ Neal J. Deckant*
                          Neal J. Deckant

20

21

22

23

24

25

26

27

28

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                              62